**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-1119**

CAREER COUNSELING, INC., d/b/a Snelling Staffing Services, a South Carolina corporation, individually and as the representative of a class of similarly-situated persons,

Plaintiff – Appellant,

v.

AMERIFACTORS FINANCIAL GROUP, LLC,

Defendant – Appellee,

and

JOHN DOES 1-5,

Defendants.

**No. 22-1136**

CAREER COUNSELING, INC., d/b/a Snelling Staffing Services, a South Carolina corporation, individually and as the representative of a class of similarly-situated persons,

Plaintiff – Appellee,

v.

AMERIFACTORS FINANCIAL GROUP, LLC,

Defendant – Appellant,

and

JOHN DOES 1-5,

Defendants.

---

Appeals from the United States District Court for the District of South Carolina, at Columbia.  J. Michelle Childs, District Judge.  (3:16-cv-03013-JMC)

---

ARGUED:  December 9, 2022                    Decided:  January 22, 2024

---

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

---

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

---

**ARGUED:**  Glenn Lorne Hara, ANDERSON & WANCA, Rolling Meadows, Illinois, for Appellant/Cross-Appellee.  Lauri Anne Mazzuchetti, KELLEY DRYE & WARREN, LLP, Parsippany, New Jersey, for Appellee/Cross-Appellant.  **ON BRIEF:** John G. Felder, Jr., MCGOWAN HOOD FELDER, Columbia, South Carolina, for Appellant/Cross-Appellee. William H. Latham, Jonathan M. Knicely, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellee/Cross-Appellant.

---

KING, Circuit Judge:

In this putative class action initiated in the District of South Carolina, it is alleged that defendant AmeriFactors Financial Group, LLC, sent an unsolicited advertisement by fax to plaintiff Career Counseling, Inc., and thousands of other recipients, in contravention of the Telephone Consumer Protection Act of 1991 (the "TCPA"), as amended by the Junk Fax Prevention Act of 2005. By its appeal (No. 22-1119), Career Counseling contests the district court's Order and Opinion denying class certification. *See Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, No. 3:16-cv-03013 (D.S.C. July 16, 2021), ECF No. 229 (the "Class Certification Decision"). And by the cross-appeal (No. 22-1136), AmeriFactors challenges the court's subsequent Order and Opinion awarding summary judgment to Career Counseling on its individual TCPA claim. *See Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, No. 3:16-cv-03013 (D.S.C. Jan. 31, 2022), ECF No. 244 (the "Summary Judgment Decision"). As explained herein, we affirm both the denial of class certification and the award of summary judgment.

I.

The operative First Amended Class Action Complaint of November 2017 alleges a single TCPA claim premised on Career Counseling's receipt in June 2016 of an uninvited fax from AmeriFactors advertising its commercial goods and services. *See Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, No. 3:16-cv-03013 (D.S.C. Nov. 28,

3

2017), ECF No. 70 (the "Complaint").[1]   Relevant here, the TCPA generally makes it unlawful "to send, to a telephone facsimile machine, an unsolicited advertisement." *See* 47 U.S.C. § 227(b)(1)(C).

According to the Complaint, AmeriFactors "sent facsimile transmissions of unsolicited advertisements to [Career Counseling] and the Class in violation of the [TCPA], including, but not limited to, the [fax sent to Career Counseling in June 2016]." *See* Complaint ¶ 2.  Career Counseling ultimately proposed a class comprised of the nearly 59,000 other persons and entities who were successfully sent the same June 2016 fax that Career Counseling received.

As more fully discussed below, by its Class Certification Decision of July 2021, the district court denied Career Counseling's request for class certification.  Thereafter, by its Summary Judgment Decision of January 2022, the court awarded summary judgment to Career Counseling on its individual TCPA claim against AmeriFactors.  That award includes $500 in statutory damages.  *See* 47 U.S.C. § 227(b)(3)(B) (providing for recovery of "actual monetary loss from [a TCPA] violation, or . . . $500 in damages for each such violation, whichever is greater").

---

[1] The record reflects that Career Counseling is a South Carolina corporation that does business as Snelling Staffing Services, an employment staffing agency that acts as a middleman between employers and prospective workers.  AmeriFactors, a Florida limited liability company, is in the business of "factoring," or purchasing another company's accounts receivable of unpaid invoices for a discounted price with the intention of collecting the full value of the unpaid invoices at a later date.  The fax sent to Career Counseling in June 2016 underpinning the Complaint was headlined "AmeriFactors — Funding Business Is Our Business" and announced that "AmeriFactors is ready to help your company with your financing needs." *See* Complaint Ex. A, at 2.

Following the district court's entry of the judgment, the parties timely noted their respective appeals. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We first address Career Counseling's challenge to the district court's Class Certification Decision of July 2021, denying Career Counseling's request for class certification pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. In so doing, we review the Class Certification Decision for abuse of discretion. *See Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009). A district court abuses its discretion in granting or denying class certification "when it materially misapplies the requirements of Rule 23." *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). More generally, a court also abuses its discretion when its decision rests on an error of law or a clearly erroneous finding of fact. *See In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 250 (4th Cir. 2023); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002).

### A.

As we explained in our 2014 decision in *EQT Production*, "Rule 23(a) requires that the prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *See* 764 F.3d at 357.[2] Additionally,

---

[2] In its entirety, under the headings "Prerequisites" for "Class Actions," Rule 23(a) provides the following:

(Continued)

5

"the class action must fall within one of the three categories enumerated in Rule 23(b)," with certification being appropriate under Rule 23(b)(3) when "(1) common questions of law or fact . . . predominate over any questions affecting only individual class members; and (2) proceeding as a class [is] superior to other available methods of litigation." *Id.* (internal quotation marks omitted). In other words, Rule 23(b)(3) requires both "predominance" and "superiority." *Id.* at 365.

Relying on precedent, we clarified in our *EQT Production* decision that Rule 23 also "contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *See* 764 F.3d at 358 (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)). Under that requirement — which is commonly referred to as "ascertainability" — "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* So, "if class members are impossible

---

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

*See* Fed. R. Civ. P. 23(a).

6

to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* (alteration and internal quotation marks omitted).

The party seeking class certification must present evidence and demonstrate compliance with Rule 23. *See EQT Prod.*, 764 F.3d at 357-58. Concomitantly, "the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *Id.* at 358 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

## B.

In denying class certification here, the district court determined that — although Career Counseling has complied with the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation — it has failed to satisfy Rule 23's implicit further requirement of ascertainability. *See* Class Certification Decision 18-24.[3] That determination derived from the uncontroverted factual premise that each of the nearly 59,000 recipients of the June 2016 AmeriFactors fax was using either a "stand-alone fax machine" or an "online fax service," as well as from the court's legal conclusion that the TCPA prohibits unsolicited advertisements sent to stand-alone fax machines, but does not reach unsolicited advertisements sent to online fax services. *Id.* at 14-18. Specifically, the court concluded that stand-alone fax machines — but not online fax services — qualify as

---

[3] Having concluded that Career Counseling has failed to satisfy the implicit ascertainability requirement, the district court did not reach the issue of whether Career Counseling has met the Rule 23(b)(3) requirements of predominance and superiority. *See* Class Certification Decision 24.

"telephone facsimile machine[s]" under the TCPA. *See* 47 U.S.C. § 227(b)(1)(C) (making it unlawful "to send, *to a telephone facsimile machine*, an unsolicited advertisement" (emphasis added)). And that conclusion rendered it necessary to be able to identify which of the fax recipients were using stand-alone fax machines and which were using online fax services. Because the court was not convinced that the stand-alone fax machine users are readily identifiable, it decided that the ascertainability requirement has not been satisfied.

For its interpretation of the TCPA, the district court relied on a December 2019 declaratory ruling of the Federal Communications Commission (the "FCC") that "an online fax service . . . is not a 'telephone facsimile machine' and thus falls outside the scope of the statutory prohibition [on sending unsolicited advertisements by fax]." *See AmeriFactors Fin. Grp., LLC*, 34 F.C.C.R. 11950, 11950-51 (2019) (the "*AmeriFactors* FCC Ruling"). The *AmeriFactors* FCC Ruling was sought by defendant AmeriFactors for purposes of this very litigation, and it was issued by the Chief of the FCC's Consumer and Governmental Affairs Bureau.

As explained in the Class Certification Decision, the district court deemed itself without jurisdiction to review the *AmeriFactors* FCC Ruling and bound to defer to it pursuant to the Administrative Orders Review Act, or Hobbs Act. *See* 28 U.S.C. § 2342(1) (specifying, in pertinent part, that "[t]he court of appeals . . . has exclusive jurisdiction . . . to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47"); *see also PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055-56 (2019) (outlining factors to be considered when deciding whether Hobbs Act obliges district court to follow particular

8

FCC order). That is, upon assessing the relevant factors, the court concluded that it was "required to find that the [*AmeriFactors* FCC Ruling] is entitled to Hobbs Act deference." *See* Class Certification Decision 18.

Next, in conducting its ascertainability analysis and resolving that it could not readily identify the fax recipients eligible for class membership under the *AmeriFactors* FCC Ruling — i.e., those recipients who were using stand-alone fax machines rather than online fax services — the district court rejected as "deficient" Career Counseling's proffered method of identifying the stand-alone fax machine users. *See* Class Certification Decision 23. Moreover, the court concluded "that it would need to make an individualized inquiry of each [fax recipient] to determine if [that recipient was a stand-alone fax machine user]." *Id.* As such, the court ruled that the class "is not ascertainable" and that "class certification is inappropriate." *Id.* at 23-24.

## C.

By its appeal, Career Counseling challenges the district court's Class Certification Decision on multiple fronts. We do not, however, accept any of its arguments as meritorious.

## 1.

As a threshold matter, Career Counseling urges us to abandon our precedents recognizing that Rule 23 contains an implicit ascertainability requirement. In other words, Career Counseling would have us rule that the district court committed legal error in denying class certification for failure to satisfy the ascertainability requirement, because

— notwithstanding our precedents holding to the contrary — no such requirement actually exists.

Of course, as a three-judge panel of this Court, we are simply unable to rule as Career Counseling proposes. That is because our Court adheres to "the basic principle that one panel cannot overrule a decision issued by another panel." *See McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc). Indeed, other panels of this Court have continued to acknowledge and enforce the ascertainability requirement. *See, e.g.*, *Peters v. Aetna Inc.*, 2 F.4th 199, 241-43 (4th Cir. 2021); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654-55, 658 (4th Cir. 2019). And we now do the same.[4]

2.

Accepting that there is an ascertainability requirement, Career Counseling argues that the district court committed legal error in according Hobbs Act deference to the *AmeriFactors* FCC Ruling that an online fax service does not qualify as a "telephone facsimile machine" under the TCPA. Career Counseling further contends that the *AmeriFactors* FCC Ruling is no more than an interpretive rule and thus is not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 264 (4th Cir. 2020) (addressing an FCC rule interpreting the meaning of the TCPA

---

[4] In recognition of the controlling principle that a three-judge panel of this Court cannot overrule a Circuit precedent, Career Counseling sought an initial en banc review of its appeal. But our Court denied that request. *See Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, No. 22-1119 (4th Cir. June 1, 2022), ECF No. 16 (Order denying initial en banc review).

10

term "unsolicited advertisement" and declining to accord that interpretative rule *Chevron* deference because it "doesn't carry the force and effect of law"). Although Career Counseling acknowledges that the *AmeriFactors* FCC Ruling might be entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), Career Counseling asserts that the *AmeriFactors* FCC Ruling fails on its merits to qualify for such deference. *See Carlton & Harris*, 982 F.3d at 264 (explaining "that an interpretive rule is entitled to [*Skidmore* deference] only to the extent it has the power to persuade" (internal quotation marks omitted)). Additionally, Career Counseling maintains that — even if the *AmeriFactors* FCC Ruling is somehow entitled to Hobbs Act, *Chevron*, or *Skidmore* deference — that ruling (issued in December 2019) cannot be applied retroactively in these proceedings (assessing the legality of the underlying June 2016 AmeriFactors fax). According to Career Counseling, the district court therefore incorrectly limited class membership to stand-alone fax machine users and erroneously required Career Counseling to show the ascertainability of those particular fax recipients.

Put simply, we need not assess or determine whether the district court erred in according Hobbs Act deference to the *AmeriFactors* FCC Ruling, whether the ruling is otherwise entitled to *Chevron* or *Skidmore* deference, or whether the ruling can be applied retroactively. Instead, we are satisfied to rule — de novo — that pursuant to its plain statutory language, the TCPA prohibits the sending of unsolicited advertisements to what the district court labelled as "stand-alone fax machines," but not to what the court accepted to be "online fax services." And we therefore conclude that the court properly limited class

11

membership to stand-alone fax machine users and required Career Counseling to demonstrate their ascertainability.

Again, the TCPA prohibits "send[ing], to a telephone facsimile machine, an unsolicited advertisement." *See* 47 U.S.C. § 227(b)(1)(C). More fully, the TCPA renders it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." *Id.* And the TCPA defines a "telephone facsimile machine" as

> equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

*Id.* § 227(a)(3). Thus, to fall within the § 227(b)(1)(C) prohibition, a fax can be sent from a "telephone facsimile machine" (as defined in § 227(a)(3)), or from a "computer," or from some "other device." But that fax can be received in only one way: on a "telephone facsimile machine" (also as defined in § 227(a)(3)).

Meanwhile, the district court labelled as a "stand-alone fax machine" what is well understood to be a "traditional fax machine." *See* Class Certification Decision 11-12. As for an "online fax service," the court deferred to the *AmeriFactors* FCC Ruling and thereby accepted that

> [a]n online fax service is a cloud-based service consisting of a fax server or similar device that is used to send or receive documents, images and/or electronic files in digital format over telecommunications facilities that allows users to access faxes the same way that they do email: by logging into a server over the Internet or by receiving a pdf attachment as an email.

12

*See AmeriFactors*, 34 F.C.C.R. at 11950 (alteration and internal quotation marks omitted). More simply stated, "online fax services hold inbound faxes in digital form on a cloud-based server, where the user accesses the document via the online portal or via an email attachment." *Id.* at 11953. When faxes are sent to such online fax services, the recipients "can manage those messages the same way they manage email by blocking senders or deleting incoming messages without printing them." *Id*. That is, the recipients have "the option to view, delete, or print [the faxes] as desired." *Id.* Importantly, "an online fax service cannot itself print a fax — the user of an online fax service must connect his or her own equipment in order to do so." *Id.* Moreover, online fax "services can handle multiple simultaneous incoming transmissions," such that "receipt of any one fax does not render the service unavailable for others." *Id.*

It is clear to us that — whereas a stand-alone fax machine is the quintessential "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," *see* 47 U.S.C. § 227(a)(3)(B) — an online fax service is not such equipment and thus cannot be said to qualify as a "telephone facsimile machine" under the TCPA. That is because an online fax service neither receives an electronic signal "over a regular telephone line" nor has the capacity to transcribe text or images "onto paper." Rather, online fax services receive faxes over the Internet and cannot themselves print any faxes. *Accord AmeriFactors*, 34 F.C.C.R. at 11953-54 (similarly recognizing that "online fax services differ in critical ways

13

from the traditional faxes sent to telephone facsimile machines Congress addressed in the TCPA").[5]

To be sure, an online fax service may qualify as a "computer" or some "other device" within the meaning of the TCPA. With respect to a "computer" or "other device," however, the 47 U.S.C. § 227(b)(1)(C) prohibition applies only to faxes sent *from* a "computer" or "other device" — and not to faxes sent *to* a "computer" or "other device" — as a result of the meaningful variances in § 227(b)(1)(C)'s language. *See Rush v. Kijakazi*, 65 F.4th 114, 120 (4th Cir. 2023) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983), for the proposition that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").

Notably, although we rely solely on the plain statutory language for our conclusion that an online fax service does not qualify as a "telephone facsimile machine" under the TCPA, this interpretation is consistent with the 1991 Report of the House Committee on Energy and Commerce recommending the TCPA's enactment. *See* H.R. Rep. No. 102-

---

[5] In arguing that an online fax service qualifies as a "telephone facsimile machine" under the TCPA, Career Counseling invokes as persuasive authority the Sixth Circuit's decision in *Lyngaas v. AG*, 992 F.3d 412 (6th Cir. 2021). The question in *Lyngaas* was whether "a TCPA claim is not actionable if the unsolicited advertisement is received by any device (such as a computer through an 'efax') other than a traditional fax machine." *See* 992 F.3d at 425. The court concluded that a device other than a traditional fax machine may qualify as a "telephone facsimile machine" under the TCPA, including a computer receiving an efax. *Id.* at 425-27. *Lyngaas* is not helpful to Career Counseling, however, in that it defines an "efax" as something different from an online fax service and specifies that an efax "is sent over a telephone line" rather than "as an email over the Internet." *Id.* at 427 (emphasis and internal quotation marks omitted).

14

317 (1991).  In relevant part, after explaining that the "[f]acsimile machines [of the time were] designed to accept, process, and print all messages which arrive over their dedicated lines," the Report specified "two reasons" why the sending of unsolicited advertisements by fax was "problematic":  (1) "it shifts some of the costs of advertising [including ink and paper costs] from the sender to the recipient"; and (2) "it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax."  *Id.* at 10.  While those problems continue to exist with stand-alone fax machines, they do not exist with online fax services, as the recipient can choose whether the print a particular fax and there can be multiple incoming transmissions at once.

At bottom, we agree with the district court — albeit based on the plain statutory language, rather than any sort of deference to the *AmeriFactors* FCC Ruling — that an online fax service does not qualify as a "telephone facsimile machine" under the TCPA. Consequently, we further agree with the court that class membership must be limited to stand-alone fax machine users and that Career Counseling must be able to demonstrate their ascertainability.

### 3.

Finally, accepting that there is an ascertainability requirement and that class membership is properly limited to stand-alone fax machine users, Career Counseling contends that the district court erred in rejecting as "deficient" Career Counseling's method of identifying the stand-alone fax machine users and in deeming the class to be "not ascertainable."  *See* Class Certification Decision 23.  We do not, however, perceive any abuse of the court's discretion.

15

As detailed in the Class Certification Decision, to identify which of the nearly 59,000 recipients of the June 2016 AmeriFactors fax were using stand-alone fax machines and which were using online fax services, Career Counseling sent a subpoena to the telephone carrier associated with each recipient's fax number. *See* Class Certification Decision 19. The subpoena asked, inter alia, whether the carrier provided an online fax service in connection with the particular number. *Id.* at 19 & n.10. According to Career Counseling, as of mid-March 2021, it had received responses indicating that more than 20,000 of the recipients were not — and only 206 of the recipients were — provided online fax services by the subpoenaed carriers. *Id.* at 19. From there, Career Counseling asserted that the more than 20,000 recipients without online fax services from the subpoenaed carriers "thus received the [June 2016 AmeriFactors fax] on a stand[-]alone fax machine." *Id.* at 20 (second alteration in original) (internal quotation marks omitted). As Career Counseling would have it, a class consisting of more than 20,000 stand-alone fax machine users is therefore ascertainable. *Id.*

Significantly, however, AmeriFactors proffered its own evidence showing that the recipients were not necessarily using stand-alone fax machines just because they were not using online fax services from the subpoenaed carriers. *See* Class Certification Decision 22. Rather, under AmeriFactors's evidence, the recipients may have been using online fax services provided by someone else. *Id.* For example, a declaration of an employee of Charter Communications Operating, Inc., stated with respect to each of the nearly 1,300 recipients with Charter-associated fax numbers that there was no way for Charter to

16

determine whether the recipient was using "another provider's online fax service product" or "a stand-alone fax machine." *Id.* (internal quotation marks omitted).

Upon "considering the totality of evidence presented by the parties," the district court ruled that Career Counseling failed to present sufficient evidence that the more than 20,000 recipients without online fax services from the subpoenaed carriers were instead using stand-alone fax machines. *See* Class Certification Decision 23. As such, the court recognized that it would be left to make an individualized inquiry as to whether each recipient was using a stand-alone fax machine at the relevant time, rendering the class of stand-alone fax machine users "not ascertainable" and class certification "inappropriate." *Id.* at 23-24.

On appeal, Career Counseling contends that the district court should have accepted its method of identifying the stand-alone fax machine users, in that — although there is evidence that those recipients could have instead been using online fax services provided by someone other than the subpoenaed carriers — there is no evidence that any recipient was actually doing so. The existing evidence alone, however, refutes the premise of Career Counseling's identification method: that recipients who were not using online fax services from the subpoenaed carriers were necessarily using stand-alone fax machines. As such, we cannot say that the district court abused its discretion in ruling that Career Counseling failed to meet its burden of demonstrating the ascertainability of the class. And we thus

17

are satisfied to affirm the court's denial of Career Counseling's request for class certification.[6]

### III.

Next, we address AmeriFactors's cross-appeal challenge to the district court's Summary Judgment Decision of January 2022, awarding summary judgment to Career Counseling on its individual TCPA claim. We review the Summary Judgment Decision de novo, viewing the facts in the light most favorable to AmeriFactors, as the non-moving party. *See Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 228 (4th Cir. 2022). Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Career Counseling's TCPA claim requires a showing that AmeriFactors "sen[t], to a telephone facsimile machine, an unsolicited advertisement." *See* 47 U.S.C. § 227(b)(1)(C). There has been no dispute that the June 2016 AmeriFactors fax was sent to a "telephone facsimile machine," as the evidence is that Career Counseling was using a stand-alone fax machine at the relevant time. *See* Summary Judgment Decision 4 & n.5, 10-11. There also has been no dispute that the fax was "unsolicited," *see id.* at 10-11,

---

[6] In these circumstances, we need not consider alternative bases for affirmance raised by AmeriFactors on appeal, including that Career Counseling has not complied with the Rule 23(a) prerequisite of adequacy of representation and has not met the Rule 23(b)(3) requirements of predominance and superiority.

meaning "transmitted to any person without that person's prior express invitation or permission, in writing or otherwise," *see* 47 U.S.C. § 227(a)(5). Although AmeriFactors unsuccessfully argued in the district court that the fax does not constitute an "advertisement," *see* Summary Judgment Decision 11-14 — i.e., "any material advertising the commercial availability or quality of any property, goods, or services," *see* 47 U.S.C. § 227(a)(5) — it has abandoned that contention on appeal. *Cf. Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 80 F.4th 466, 470-72 (4th Cir. 2023) (continuing litigation over whether fax constituted "advertisement" within meaning of TCPA).

What AmeriFactors argued in the district court that it continues to assert in this Court is that there is a genuine dispute of material fact as to whether it is liable as the "sender" of the fax. *See* Summary Judgment Decision 14-20. AmeriFactors relies for its argument on a declaratory ruling of the FCC that was issued by the Chief of the Consumer and Governmental Affairs Bureau in September 2020 in response to a petition filed by a non-party to these proceedings. *See Akin Gump Strauss Hauer & Feld LLP*, 35 F.C.C.R. 10424 (2020) (the "*Akin Gump* FCC Ruling"). The *Akin Gump* FCC Ruling explained that, by way of its rules, the FCC "define[s] the term 'sender' of a fax advertisement as 'the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.'" *Id.* at 10424 (quoting rule found at 47 C.F.R. § 64.1200(f)(11) as of January 8, 2024).

The *Akin Gump* FCC Ruling, however, sought to clarify liability in situations in which the "advertiser" utilized the services of a "fax broadcaster" to send a TCPA-violating fax advertisement on the advertiser's behalf. *See Akin Gump*, 35 F.C.C.R. at 10425.

19

According to the *Akin Gump* FCC Ruling, "a fax broadcaster may be exclusively liable for TCPA violations where it engages in deception or fraud against the advertiser, such as securing an advertiser's business by falsely representing that the broadcaster has consumer consent for certain faxes." *Id.* at 10426. That is, "the fax broadcaster, not the advertiser, is the sole 'sender' of a fax for the purposes of the TCPA when it engages in conduct such as fraud or deception against an advertiser if such conduct leaves the advertiser unable to control the fax campaign or prevent TCPA violations." *Id.* at 10427.

Invoking the *Akin Gump* FCC Ruling, AmeriFactors asserts that — although it was the advertiser in the June 2016 fax received by Career Counseling — it is not liable as the fax's "sender" because it was defrauded and deceived by a fax broadcaster it employed to disseminate the fax on its behalf. As proof of the fraud and deception it alleges, AmeriFactors points to the following evidence: that the June 2016 fax was AmeriFactors's first and only fax advertisement; that AmeriFactors engaged a company called AdMax as the fax broadcaster and relied upon AdMax's advice and expertise; that AdMax prepared the list of fax recipients, including Career Counseling; that AdMax knew that the TCPA prohibits sending unsolicited fax advertisements but failed to advise AmeriFactors of the illegality of the June 2016 fax; and that AdMax merely advised AmeriFactors to include language in the fax alerting the recipient how to opt out of receiving future faxes, leading AmeriFactors to believe that was all it needed to do to comply with the law. AmeriFactors maintains that the foregoing evidence demonstrates that AdMax made material misrepresentations that, pursuant to the *Akin Gump* FCC Ruling, relieve AmeriFactors of "sender" liability.

20

In response, Career Counseling contests both the applicability of the *Akin Gump* FCC Ruling and the sufficiency of AmeriFactors's proof of fraud and deception. Career Counseling highlights the lack of any evidence that AdMax affirmatively and falsely represented to AmeriFactors that the June 2016 fax was legal. Indeed, the record reflects that AmeriFactors never questioned AdMax about the general legality of sending the fax or AdMax's recommendation to include the opt-out language. Rather, AmeriFactors simply discussed with AdMax the services it would provide and the cost for those services, and then AmeriFactors instructed AdMax to disseminate the fax to the recipients on the AdMax-prepared list.

By its Summary Judgment Decision, the district court recognized the applicability of the *Akin Gump* FCC Ruling but rejected AmeriFactors's evidence as insufficient to "create an issue of material fact regarding whether [AdMax] made false statements of material fact." *See* Summary Judgment Decision 17-18. Specifically, the court concluded that AmeriFactors's evidence "does not establish how any statement made by [AdMax] was materially false." *Id.* at 18.

Assuming that the *Akin Gump* FCC Ruling is applicable — without unnecessarily assessing and deciding that question — we agree with the district court that there is insufficient evidence of any fraud and deception to place AmeriFactors's "sender" liability in dispute. AmeriFactors thus being liable for sending the June 2016 fax, we affirm the court's award of summary judgment to Career Counseling.

21

IV.

Pursuant to the foregoing, we affirm the district court's denial of Career Counseling's request for class certification, as well as the court's award of summary judgment to Career Counseling on its individual TCPA claim against AmeriFactors.

*AFFIRMED*